UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KYRON W.  GEANES, | ) | CASE NO.  4:11 CV 1007 |
| | ) | |
| Petitioner | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| ROBERT FARLEY, *et al.*, | ) | |
| | ) | |
| Respondents | ) | |

Before the court is *pro se* petitioner Kyron W. Geanes's habeas corpus Petition pursuant to 28 U.S.C. § 2241.  He names Warden Robert Farley of the Federal Correctional Institution at Elkton, Ohio (F.C.I.  Elkton) as respondent.  Mr. Geanes, who is incarcerated at F.C.I. Elkton, claims the Bureau of Prisons (BOP) failed to follow its policy when he was disciplined at the United States Penitentiary (USP) Lewisburg in Lewisburg, Pennsylvania for violating an Offense Code.  He seeks expungement of the Incident Report from his record and restoration of Good Conduct Time (GCT) the BOP forfeited as a sanction for his violation.

*Background*

On October 29, 2009, at approximately 7:30 pm, USP Lewisburg Officer J. J. Steppie

was conducting a search of cube K08-072L.[1]  During the course of his search, Officer Steppie noticed a shirt and pair of pants hanging on a plastic hanger.  He searched the clothing to find two hand rolled cigarettes in the pocket of the shirt and Mr. Geanes's identification card in the pants pocket.  The cigarettes appeared to contain a green leafy substance similar to Marijuana.  He tested the substance shortly after his discovery using a NIK field test kit "E" for Marijuana.  The substance tested positive for Marijuana.

The cubicle in which the clothes and marijuana were found was assigned to Mr. Geanes.  When Officer Steppie questioned him about the cigarettes, he allegedly replied, "It's mine."  An incident report was prepared on October 29, 2009, charging Mr. Geanes with possession of narcotics/marijuana in violation of Offense Code 113.  The incident report indicates a copy of the report was delivered to Mr. Geanes on October 30, 2009, at 9:00 pm.  He alleges, however, that he was placed in administrative detention on October 29, 2009, and never received the report until January 10, 2010.

Mr. Geanes received a revised incident report on February 24, 2010.  A Unit Discipline Committee (UDC) Hearing was held on March 4, 2010.  The UDC Chair provided Mr. Geanes with a copy of a UDC Delay Notice advising him why his UDC Hearing was delayed.  The Notice explained that the Disciplinary Hearing Officer (DHO) returned Mr. Geanes's original Incident Report back to the staff at Lewisburg Camp to be re-written.  The Notice was signed by Warden William A. Scism, who approved the extension on March 3, 2010.

A hearing before the DHO commenced on March 11, 2010.  While the revision still

---

[1]     Because it was the version of the facts upon which Mr. Geanes was found in violation of Offense Code 113, the court will rely on the recitation of facts set forth in Officer Steppie's final revision of the incident report.

noted Mr. Geanes's identification was found in a pair of pants,  the location of where the contraband was discovered was changed in the revised incident report. The original report stated marijuana cigarettes were discovered in the shirt pocket and the revision stated the cigarettes were discovered in a pants pocket.  Although both reports referred to the same shirt and pants hanging together on a plastic hanger, the DHO postponed the hearing to address the discrepancy as to where the marijuana cigarettes were found.

On April 28, 2010,  Lt. Engel provided Mr. Geanes advance notice of the second revision to his original incident report. The revision noted that cigarettes were discovered in Mr. Geanes's shirt pocket.  The report consistently stated that Mr. Geanes's identification was discovered in the pocket of the pants hanging on the same hanger with the shirt containing the marijuana cigarettes. A UDC hearing was conducted on April 30, 2010. At the hearing, Mr. Geanes complained that the UDC Chair did not provide any notice explaining the reason for a delay in his UDC hearing. Acting Warden Maiorana did sign a UDC Hearing Delay Notice on behalf of Warden Scism on May 13, 2010.

A DHO hearing was held on May 20, 2010.[2]  Mr. Geanes waived his right to staff representation, witness testimony and denied the charges.  He was advised of his rights before the DHO.  Mr. Geanes provided the DHO with a document stating he did not give his consent to have the incident report rewritten. The DHO advised Mr. Geanes that his consent was not necessary to authorize the re-writing of the report.

---

[2]    A review of the Incident Report used at this hearing reveals the prison institution as: "LSCI Allenwood" (Allenwood Low Security Correctional Institution).  Also, in Mr. Geanes's prayer for relief, he states that the "unprofessional choices of the staff at Lewisburg Camp and L.S.C.I. Allenwood . . . violated well established Federal Codes." (Pet. at 7.)  Thus, it appears Mr. Geanes was transferred from Lewisburg to Allenwood to F.C.I.  Elkton during the relevant period of time outlined in his Petition.

The DHO noted and explained that the disciplinary hearing process was delayed because of his requests to have the incident report re-written to provide additional details. He advised that the delay was approved in writing by the Acting Warden. The DHO concluded that he did not believe Mr. Geanes's right to defend himself against the charge was infringed upon by the delay, nor did Mr. Geanes suggest he was prejudiced by the delay during his hearing.

The hearing began with a review of Officer Steppie's latest version of the incident report, followed by a memorandum provided by Kristin Rupert, dated October 29, 2009.  Ms. Rupert's memorandum explained that when Mr. Geanes was called to the control center she presented him with the marijuana cigarettes and asked if they belonged to him.  Mr. Geanes stated that "the joints are mine, no one else's."  (Pet.'s Ex. E. at 2.)  Photographs of the NIK test kit and the contraband were also provided as evidence during the hearing.

Mr. Geanes continued to deny the charges during the DHO hearing.  He stated: "I never told him anything was mine.  In this last report he said the dates, times and testing were a problem.  This was not an issue.  And why wasn't a Lt. used for the test?  This room was a common area.  Why did he focus on me?"  (Pet.'s Ex. E. at 1.)  Considering the evidence provided, as well as Mr. Geanes's admission to Officers Steppie and Rupert that the contraband belonged to him, the DHO did not find his hearing statement credible.  Moreover, the DHO did not believe either Steppie or Rupert had anything to gain by not telling the truth.  Further, the search of Mr. Geanes's cubicle yielded not only his identification, but contraband in the same set of clothing.  Finally, at the time the drugs were discovered Mr. Geanes never assigned blame to anyone else.

The DHO considered all of the relevant evidence in this case.  He concluded that the greater weight of the evidence supported a finding that Mr. Geanes committed the prohibited act of

-4-

possessing narcotics/marijuana.  The DHO sanctioned him with the loss of 40 days GCT, 60 days disciplinary segregation, 12 months loss of visitation (concluding 5/19/11), 12 months no contact visitation (5/20/11 - 5/19/12) and a disciplinary transfer.   A copy of the decision, issued May 25, 2010, was delivered to Mr. Geanes on May 27, 2010.  Mr. Geanes did not appeal the DHO's decision.

*Analysis*

Mr. Geanes now claims the "some evidence" standard was not met by the DHO.  He maintains that the cubicle where the contraband was discovered is a common area because it has no door.  Anyone could have placed the cigarettes in his clothes, he argues.  Mr. Geanes refutes any claim that he told Officer Steppie that the drugs belonged to him.

Citing Program Statement 5270.07, Mr. Geanes argues there is no provision which allows staff to re-write incident reports.  Even though a DHO may refer a case back to the UDC for further information, this does not permit the report to be re-written.  The fact that the DHO took this liberty without the authority of the regulations, "brings into question the impartiality of the DHO." (Pet. at 6.)  He argues this is a violation of his constitutional rights as set forth in "Wolff v. McDonnell."

Mr. Geanes claims the respondents acted in contravention of P.S. 5270.07, which mandates that inmates be provided a written statement of the charges against them within 24 hours of the incident.  Yet, Mr. Geanes maintains, he never received the incident report that was issued on October 29, 2009 until January 10, 2010.  He adds that while P.S. 5270.07 allows the UDC to extend the hearing for good cause, the Acting Warden did not sign off on the last UDC hearing extension until after the UDC hearing was held.  Noting that his loss of GCT is a liberty interest

warranting due process protection under the Fifth and Fourteenth Amendments, Mr. Geanes asserts the DHO was not entitled to change policy that "goes totally against 28 C.F.R. and F.B.O.P. policy."[3]  (Pet. at 6.)

*Exhaustion*

Federal prisoners are required to exhaust administrative remedies before filing a petition under 28 U.S.C. § 2241. *Little v. Hopkins*, 638 F.2d 953, 954 (6th Cir.1981). As the Sixth Circuit has noted, "[t]he Bureau of Prisons should be given the opportunity to consider the application of its policy to [the] petitioner's claim before the matter is litigated in the federal courts." *Urbina v. Thorns*, 270 F.3d 292, 295 n. 1 (6th Cir.2001) (quoting *Taylor v. United States*, 62 F.3d 1418 (6th Cir.1995)).  The Sixth Circuit has recognized, however, that the habeas exhaustion requirement is not without exception and that a prisoner may be excused where pursuing such remedies would be futile or unable to afford the petitioner the relief he seeks. *Fazzini v. Northeast Ohio Correctional Center*, 473 F.3d 229, 236 (6th Cir.2006); *Goar v. Civiletti*, 688 F.2d 27, 28-29 (6th Cir.1982).

Here, Mr.  Geanes does not argue that his administrative remedies would be futile, or that the BOP is unable to afford him the relief he seeks. Because he was required to appeal within 20 days of the DHO's decision, however, any unexhausted claims would be procedurally defaulted. When a prisoner is unable to obtain an administrative remedy because of his failure to appeal in a timely manner, then he has procedurally defaulted his habeas corpus claim. *See Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 760 (3rd Cir.1996); *Nigro v. Sullivan*, 40 F.3d 990, 997 (9th Cir.1994); *Engle v. United States*, No. 00-6659, 2001 WL 1356205, at *2 (6th Cir. Oct. 25, 2001).

---

[3]      Mr. Geanes only cites Chapter 28 of the Code of Federal Regulations.  The court presumes he is referring to subsections within section 541.

-6-

In such cases, the petitioner must show cause and prejudice for the failure in order to bring the claim in court. *Engle*, at 2.

Mr. Geanes never attempts to establish 'cause' for his default.  The court does note that he is no longer incarcerated in the prison where the incident took place, or where his DHO hearing was held.  Those facts notwithstanding, it is not the role of the court to establish cause on behalf of a procedurally defaulted claimant. A thorough review of the Petition suggests, in the alternative, that Mr. Geanes's failure to exhaust be excused as it would be more efficient to decide his claims on the merits. *See id.* ("[w]here exhaustion of administrative remedies is not jurisdictional, the district court must determine whether to excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court"); *see also McCarthy v. Madigan*, 503 U.S. 140, 144-145 (1992), *superceded on other grounds*, 42 U.S.C. § 1997(e).  For the reasons set forth below, the court finds Mr. Geanes's Petition lacks merit and thus exhaustion of his administrative remedies is excused.

*Due Process - Disciplinary Hearing*

An inmate possesses a due-process liberty interest in good-time credit which has already been earned and in which the inmate is vested, as it will inevitably affect the inmate's duration of confinement. *Sandin v. Conner*, 515 U.S. 472, 483 (1995).  As such, when a prisoner is sanctioned with the loss of GCT he is entitled to some due process protection. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)("there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution").  Referencing the C.F.R. and the BOP Program Statement, Mr. Geanes claims his right to due process was violated when the BOP delayed his receipt of the incident report almost three months after the incident

-7-

The Supreme Court has explained that prisoners are entitled to due process protection that includes: written notice of the charges at least 24 hours before a hearing to enable the inmate to prepare a defense; to call witnesses and present documentary evidence if doing so is not an undue hazard to institutional safety, and a written explanation of the evidence relied on and reasons for disciplinary action. *Id.*  A disciplinary decision will satisfy the requirements of procedural due process when there is "some evidence" to support the disciplinary decision by the fact finder. *Superintendent, Mass. Corr. Institution v. Hill*, 472 U.S. 445 (1985).

Mr. Geanes was provided advance notice, a hearing and a written explanation of the disciplinary action taken against him. Thus, he received all of the due process safeguards outlined in *Wolff*.  The fact that he received a copy of the Incident Report almost three months after the incident charging him with possession of narcotics did not *per se* violate his due process rights.  It is "freedom from restraint which, . . .  imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," for which the due process clause provides protection. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995). There is no allegation that the delayed receipt of the incident report caused Mr. Geanes to suffer an atypical and significant hardship.  *Id.*

*Failure to Follow Policy*

Mr. Geanes alleges several times that the DHO failed to follow established BOP policy and procedure, which undermined the impartiality of the hearing officer.  Not only are his allegations conclusory statements without the support of facts or law, but there is no reasonable suggestion the DHO engaged in any behavior during the hearing that suggested he was not impartial. The offended regulation to which Mr. Geanes alludes provides that the "DHO will be an impartial decision maker who was not a victim, witness, investigator, or otherwise significantly involved in

-8-

the incident." 28 C.F.R. § 541.8(b).  There is no allegation that the DHO was not a victim, witness, investigator or directly involved in Mr. Geanes's incident.  The fact that the DHO may "refer [an incident report] back for further investigation, review, and disposition," suggests he has authority to clarify the record.  The substance of the charges did not change at all with the incident report revisions.  The first revision outlined how the reporting officer determined that the cigarettes found were actually marijuana.  The report consistently stated that the cubicle was assigned to Mr. Geanes, and that his  identification card was found in the pants pocket of the clothing hanging in the cubicle.  The only discrepancy among the three incident reports centers on whether the marijuana was found in the shirt or pants pocket of the same set of clothing.

A federal court's review of the quantum of evidence supporting a prison disciplinary board's decision is limited to determining whether some evidence supports the decision.  *Preiser*, 411 U.S. at 500.  The court is not permitted to re-weigh the evidence presented to the board. *Id.*  The quantity of evidence to support a disciplinary conviction is minimal and does not involve the independent assessment of witness credibility or weighing of evidence by the federal courts. *Id.*  Consequently, a prison disciplinary decision should be upheld if "some evidence" in the record supports the decision. *Id.* at 455-56.

Mr. Geanes does not dispute the fact that the marijuana was found in his clothing, with his identification and in his cubicle.  Two officers reported that, at the time of the incident, he admitted the marijuana belonged to him.  Despite his subsequent denial of these statements, the greater weight of evidence suggested he was in possession of the narcotics. Therefore,"some evidence" supports a finding that he engaged in a group demonstration.  There is no basis upon which this court can set aside the DHO's sanctions when it was determined Mr. Geanes admitted to

-9-

conduct considered a violation under the BOP code.  As such, he received all the process to which

he was due, and there was 'some evidence' to support the decision to find him guilty of violating

Code 113.

*Conclusion*

Based on the foregoing, the Petition is dismissed pursuant to 28 U.S.C. § 2243.  The

court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision could not be

taken in good faith.

IT IS SO ORDERED.

/s/*SOLOMON OLIVER, JR.*
CHIEF JUDGE
 UNITED STATES DISTRICT JUDGE

September 16, 2011